# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Enterprising Solutions, Inc., a Nevada corporation, doing business as Sunwest Employer Services,<br><br>                Plaintiff,<br><br>v.<br><br>National Union Fire Insurance Company o Pittsburgh, PA, a Pennsylvania corporation,<br><br>                Defendant. | No. 2:10-cv-01430-PHX-REJ<br><br>**OPINION AND ORDER** |

    Joyce N. Van Cott
    Ryan J. Talamante
    VAN COTT & TALAMANTE PLLC
    2025 N. Third Street, Suite 260
    Phoenix, AZ  85004

     Attorneys for Plaintiff

    Adam E. Lang
    SNELL & WILMER
    1 Arizona Center
    400 E. Van Buren
    Phoenix, AZ  85004-0001

    Amy M. Samberg
    SNELL & WILMER LLP - Tucson, AZ
    1 S. Church Avenue, Suite 1500
    Tucson, AZ  85701-1630

    In this insurance coverage dispute, plaintiff Enterprising Solutions, Inc., dba Sunwest Employer Services, filed this action against defendant National Union Fire Insurance Company in Arizona state court, alleging claims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.  Defendant removed the action to federal court on

the basis of diversity jurisdiction.

The action is now before the court on plaintiff's renewed motion for partial summary judgment and defendant's renewed motion for summary judgment (## 71, 81). Both motions address only plaintiff's first claim, for declaratory relief. I have thoroughly reviewed the parties' arguments and submissions, and for the reasons explained below, I deny plaintiff's motion and grant defendant's motion. Plaintiff's Request for Telephonic Status Conference (#109) is denied.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

The standard of review is the same for cross-motions as individual motions for summary judgment: "'The court must consider each motion independently and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party.'" Winans v. Starbucks Corp., 796 F.Supp.2d 515, 517-18 (S.D.N.Y. 2011)(quoting Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)); see also, e.g., Nipponkoa Insurance Co. v. Norfolk Southern Railway Co., 794 F.Supp.2d 838 (S.D. Ohio 2011).

FACTUAL BACKGROUND

This coverage dispute arises out of plaintiff's admitted failure to properly calculate the necessary contributions to fully fund a group medical and group dental plan, which caused plaintiff to terminate the plans effective August 19, 2009. The present action, between plaintiff and its insurer, defendant National Union Fire Insurance Co., concerns whether plaintiff's policies with defendant cover the claims against plaintiff resulting from termination of the plans.

The following factual background is drawn from the parties' statements of fact and is limited to those facts the court deems relevant to this decision. Unless otherwise noted, the facts set forth below are undisputed for purposes of the present motions.[1]

  a. <u>Plaintiff</u>

Plaintiff is a professional employer organization ("PEO") that provides services to employers by assuming various employer-related responsibilities, such as payroll services. As a PEO, plaintiff assumes the various employer-related responsibilities by entering into "co-employer agreements" with its employer-clients. Under the agreements, plaintiff becomes a co-employer of the employer-client's employees.

One of the PEO services plaintiff offered to its employer-clients was the administration of an employee health benefit program. The benefit plan documents, Exhibits C (group health) and D (dental) to plaintiff's Statement of Facts in Support of Motion for Partial Summary Judgment ("PSOF"), specify, among other things, the names of the plans, the type of plan, the Plan Administrator, the Plan Sponsor, and the Claims Administrator. <u>See</u> PSOF, Exhibit ("Exh.") C, p. 83; Exh. D, p. 34. The group health plan designates Enterprising Solutions, Inc. dba Sunwest Employers Services, Inc., as the Plan Name, Plan Sponsor, and Plan Administrator, and Benefit Systems & Services ("BSSI") as the Claims Administrator. The only difference between the group health plan and the dental plan with respect to the above is the Plan Name for the dental plan, which

---

[1] The court will, for the most part, omit citations to the parties' multiple statements of fact.

is Enterprising Solutions, Inc. dba Sunwest Employers Services Inc. Group Standard Dental Plan. I refer to the plans in this decision as the "Sunwest Plans." Both plans are self-funded. See Exh. C, p. 83; Exh. D, p. 34.

Among other things, plaintiff was responsible for determining the amount of contributions to the Sunwest Plans, making sure that the contributions covered the medical and dental claims and other expenses of the plans, properly receiving and processing information and noticing errors that would have reduced or avoided losses sustained by the plans, and taking appropriate remedial measures when necessary.

Plaintiff established the amount of contributions required to be paid into the Sunwest Plans by the employers and employees each year based on, e.g., prior claim history, incurred but not reported claims, records in plaintiff's possession, general claim trends, and other information plaintiff received from the Claims Administrator, BSSI. The aggregate amount of contributions from the employers and employees was intended to cover all costs of the Sunwest Plans for each plan year, including all claims for benefits.

The contribution levels plaintiff established for 2008 and 2009 were insufficient to cover all claims and expenses. Consequently, plaintiff notified the plan participants that it was terminating the Sunwest Plans effective August 19, 2009. According to plaintiff, since April 2009, it has received over 550 complaints from various Sunwest Plans claimants, which plaintiff describes as "Sunwest Plan participants," "the participants' co-employers," and "the contracted medical providers." Complaint, ¶ 36. Defendant disputes the number of complaints, but the dispute over numbers is not material to my decision. Defendant notes that of the claims, it has defended or settled seven on plaintiff's behalf, subject to a reservation of rights. See National Union's Renewed Motion for Summary Judgment, p. 3 and p. 3 n.2.

      b.      The Insurance Policies[2]

On March 31, 2008, defendant issued a Staffing Services Liability Policy to plaintiff, effective March 31, 2008, through March 31, 2009. The Staffing Services Liability Policy was renewed and the renewal policy was effective from March 31, 2009, to March 31, 2010. In all respects relevant to the pending motions, the policies are identical.[3]

The Staffing Services Liability Policy gave plaintiff several different types of coverage, including coverage for "Wrongful Acts, Errors and Omissions" (Coverage A). Coverage A provides:

> We will pay those sums you are legally obligated to pay to compensate others for loss resulting from your wrongful act or that of another for whom you are legally responsible. The wrongful act must first take place during the policy period and solely in the conduct of your business as a staffing service or as a personnel placement service in the Coverage Territory.

Defendant's Statement of Facts in Support of Renewed Motion for Summary Judgment ("DSOF"), Exh. 1, p. 003. The Staffing Services Liability Policy included an Employee Benefit Liability ("EBL") Endorsement and a PEO Endorsement.

      (1)      The PEO Endorsement

The PEO Endorsement includes several definitions that amend the Staffing Services Liability Policy. See DSOF, Exh. 1, pp. 036-037. The PEO Endorsement defines "staffing services" as "service(s) performed for clients for a fee to supply that client with a staffing service employee(s)." Id. at 036. Staffing services "includes professional employer organization (PEO)." Id. The PEO Endorsement defines PEO to mean:

---

[2] Defendant also issued a Commercial Umbrella Policy to plaintiff covering the same periods. See Complaint, ¶¶ 22-26. The umbrella policy provided excess coverage for sums plaintiff "becomes legally obligated to pay by reason of liability imposed by law or assumed by [plaintiff] under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world." Complaint, ¶ 23. Because the umbrella policy provides excess coverage only, the policy terms do not inform my decision on the present motions.

[3] Because the relevant language did not change, the court will cite only to the 2008-2009 policy and endorsements.

PAGE 5 - OPINION AND ORDER

>an employer whose business is to contractually assume defined employer responsibilities of a client's workers. This employer provides integrated business services to manage human resource responsibilities. The employer delivers these services by establishing and maintaining an employer relationship with the workers assumed from its clients by a contract that defines certain employer rights and responsibilities for its clients and leased employees.

Id.

The PEO Endorsement defines "wrongful act" as:

>[A]ny breach of duty, neglect, error, misstatement, misleading statement or omission in performing or failing to perform services for others for a fee in the administration of leased employees assumed from the client.

DSOF, Exh. 1, p. 037. The PEO Endorsement excludes from Coverage A (Wrongful Acts, Errors and Omissions) of the Staffing Services Liability Policy "[a]ny Insured's failure to fulfill any duty or obligation imposed by the Employment Retirement Income Security Act of 1974, including amendments to that law, or similar federal, state, or local statutory or common law." Id.

   (2)  The EBL Endorsement

The EBL Endorsement provided coverage to plaintiff pertaining to the employee benefits program for:

>all sums which you shall become legally obligated to pay as damages because of any claim made against you for "wrongful acts" arising out of the "administration" of your "employee benefits program", as defined in the Definitions section of this endorsement. This insurance applies only if the "wrongful act" occurs on or after the retroactive date, if any, shown in the schedule above and prior to the end of the policy period and a claim for damages covered by this endorsement is first made against you during the policy period.

DSOF, Exh. 1, p. 040. The EBL Endorsement defines "wrongful act" as "any actual or alleged negligent act, error or omission in the "administration of your "employee benefits program." DSOF, Exh. 1, p. 041. "Employee benefits program" is defined to include, among other things, "group accident or health insurance" and "any other similar employee benefits" in programs "offered by you to your 'employees.'" Id. at p. 040. "Administration" means:

>(a) giving counsel to employees with respect to your "employee benefits program"; (b) interpreting your "employee benefits program"; (c) handling of records in connection with your "employee benefits program"; or (d) effective enrollment, termination or cancellation of "employees" under your "employee benefits

PAGE 6 - OPINION AND ORDER

programs", provided any action which gives rise to a "Wrongful Act" was authorized by you.

DSOF, Exh. 1, p. 040.

Similar to the PEO Endorsement, the EBL Endorsement excludes coverage for:

all sums which you shall become legally obligated to pay as loss because of any "breach of fiduciary duty" or because of any "breach of fiduciary duty" by any person for whom you are legally responsible and arising out of your activities as a fiduciary of any plan covered by this endorsement.

DSOF, Exh. 1, p. 041. "Breach of fiduciary duty" is defined as:

the violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 or amendments thereto (hereinafter referred to as "ERISA"[)] with respect to any plan formed under ERISA which is [covered] by this endorsement.

Id.

## DISCUSSION

Plaintiff's claim for declaratory relief asks the court to find that plaintiff "is afforded insurance coverage for the claims of the Sunwest Plan Claimants under the Staffing Services Policy and/or the Umbrella Policy, and that [defendant] has the obligation to immediately investigate those claims and provide [plaintiff] with a defense to those claims." Complaint, p. 12. In its motion papers, plaintiff clarifies that what it really seeks is a declaration that defendant must defend *and* indemnify plaintiff for the claims brought against it.[4] See Plaintiff's Motion for Partial Summary Judgment, p. 2. In essence, plaintiff asserts that under Arizona contract law, defendant is obligated under the Staffing Services Liability Policy and the EBL Endorsement to provide coverage.

Defendant, in turn, makes numerous arguments against a finding of coverage. Several of defendant's arguments ask the court to decide issues that are fact-specific and not appropriate for summary judgment. These arguments include: how many actual claims against plaintiff remain; whether plaintiff properly tendered any of the claims to defendant; whether plaintiff is "legally

---

[4] The parties do not separately address issues of defense v. indemnification, thus, the court will not address these issues separately.

PAGE 7 - OPINION AND ORDER

obligated to pay" the remaining claims; whether the claimants submitted all necessary information to obtain benefits; and finally, who is the "insured" under the policy. See generally Defendant's Renewed Motion for Summary Judgment, pp. 12-22. If these were defendant's only arguments, material issues of disputed fact would preclude summary judgment.

Defendant also contends, however, that plaintiff's actions that resulted in termination of the Sunwest Plans do not qualify for coverage as "wrongful acts" under the Staffing Services Liability Policy and endorsements, but more importantly, are specifically excluded from coverage. These arguments raise issues of contract interpretation, which are appropriate for this court to address in the context of summary judgment.

      a.      Arizona Principles of Insurance Policy Interpretation

The interpretation of an insurance policy presents a question of law. Colorado Cas. Ins. Co. v. Safety Control Co., Inc., 228 Ariz. 517, 525, 269 P.3d 693 (Ariz. App. 2012). Arizona courts interpret insurance contracts "'according to their plain and ordinary meaning,'" id. (quoting Keggi v. Northbrook Prop. & Cas. Ins. Co., 199 Ariz. 43, 46, 13 P.3d 785 (Ariz. App. 2000)), and "examine the policy's terms from the standpoint of one untrained in law or the insurance business." Id. (citing Thomas v. Liberty Mut. Ins. Co., 173 Ariz. 322, 325, 842 P.2d 1335 (Ariz. App. 1992)). "'[A]mbiguity in an insurance policy will be construed against the insurer'; however, this rule applies only to provisions that are 'actually ambiguous.'" Keggi, supra, 199 Ariz. at 46 (citation omitted). When interpreting an insurance contract, an Arizona court "ha[s] a duty to 'harmonize all parts of the contract by a reasonable interpretation in view of the entire instrument,'" and "the 'specific provisions of a contract qualify the meaning of a general provision.'" Aztar Corp. v. U.S. Fire Ins. Co., 223 Ariz. 463, 475, 224 P.3d 960 (Ariz. App. 2010) (citations omitted).

"Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." Keggi, 199 Ariz. at 46 (citation omitted).

b.    Analysis

Although it is a stretch to categorize plaintiff's conduct as "wrongful acts" within the meaning of the various definitions set forth above, for purposes of this decision, I find that the language of the policy and the endorsements is broad enough to cover plaintiff's potential losses from "wrongful acts" in the administration of the Sunwest Plans, assuming all the conditions precedent for valid claims under the policy were, as a factual matter, satisfied. I conclude, however, that even assuming that plaintiff's failure to pay medical and dental claims and termination of the Sunwest Plans qualify as "wrongful acts" under the policy and that plaintiff properly tendered the claims against it to defendant, the policy excludes coverage for the conduct that resulted in plaintiff's termination of the Sunwest Plans.

Plaintiff admits that it failed to properly calculate the contributions necessary to fully fund the Sunwest Plans, and that the miscalculation of contributions resulted in termination of the plans. Complaint, ¶¶ 30 and 31-35; see also Plaintiff's Motion for Partial Summary Judgment, p. 4 ("Unfortunately, the contributions levels that [plaintiff] established during 2008 and 2009 were insufficient to cover the cost of medical and dental claims and other expenses of the Sunwest Plan that were incurred during 2009, and [plaintiff] was forced to terminate the Sunwest Plan as of August 19, 2009").

Plaintiff contends that miscalculation of benefits does not implicate ERISA fiduciary duties but rather fits within the definition of "administration" of an employee benefit plan covered under the Staffing Services Liability Policy and EBL Endorsement.[5] Plaintiff further contends that

---

[5]  Plaintiff compares its miscalculation of contributions to fund the Sunwest Plans to the improper calculation of benefits resulting in underfunding of a plan, citing Maryland Cas. Co. v. Economy Bookbinding Corp. Pension Plan and Trust, 621 F.Supp. 410 (D. N.J. 1985). The Maryland Cas. court did conclude that the calculation of benefits fell within the clause "interpreting the Employee Benefits Programs" in the definition of "administration," but more importantly (which plaintiff fails to mention), the court noted that the employee benefits liability policy in that case did not, through the insurer's oversight, contain a specific exclusion concerning ERISA violations, in stark contrast to the policy at issue in this case. See Maryland Cas., 621 F.Supp. at 412.

PAGE  9 - OPINION AND ORDER

defendant has failed to identify any ERISA provision that plaintiff's conduct breached.

As noted above, the EBL Endorsement defines "administration" as:

> (a) giving counsel to employees with respect to your "employee benefits program"; (b) interpreting your "employee benefits program"; (c) handling of records in connection with your "employee benefits program"; or (d) effective enrollment, termination or cancellation of "employees" under your "employee benefits programs" . . . .

DSOF, Exh. 1, p. 040. Courts have differed in how they interpret "administration" in similar policy endorsements - some narrowly to mean purely ministerial acts,[6] and others more broadly[7] - but I have found no authority for the proposition that discretionary decision-making activities such as determining the amount of contributions necessary on yearly basis to sustain a benefit plan's ability to reimburse medical and dental claims and pay the plan's expenses qualify as "administration" under the policy definition.

Plaintiff's calculation of contribution levels involved the exercise of discretion and was not, therefore, merely administrative. In that respect, plaintiff's exercise of discretion in failing to properly calculate contributions is not included within the definition of "administration" and is beyond the scope of the policy.

In any event, I find that to the extent plaintiff's miscalculation of contribution levels might qualify as "administration," it nonetheless was a discretionary action undertaken in a fiduciary

---

[6] E.g., Maryland Casualty Co. v. Economy Bookbinding Corporation Pension Plan and Trust, 621 F.Supp. 410, 413-14 (D. N.J. 1985) ("It is clear that the policy limits coverage to liability incurred in relatively routine, ministerial acts performed in relation to the Pension Plan, and avoids coverage of liability incurred in the decision-making and monitoring involved in managing the Plan's investments.")

[7] E.g., Medford v. Argonaut Ins. Group, 2007 WL 4570713 * 4 (D. Or. Dec. 26, 2007 (Panner, J.) ("The policy itself does not restrict the definition of 'administration' to ministerial acts" -- finding that decision not to obtain health insurance that did not cover retirees '[e]ffect[ed] enrollment, termination or cancellation of employees under the employee benefit programs."); Stinker Stores, Inc. v. Nationwide Agribusiness Ins. and Order Co., 2010 WL 1338380 (D. Idaho March 31, 2010) ("decision to terminate an employee benefit plan may qualify as a negligent act, error or omission which causes the termination or cancellation of an employee under an employee benefit plan.")

PAGE 10 - OPINION AND ORDER

capacity and was subject to ERISA fiduciary standards of care.  Plaintiff, the named plan administrator, was the ERISA fiduciary for the Sunwest Plans.  See PSOF Exh. C, p. 83-84 ("The named fiduciary is the plan administrator"), and Exh. D, p. 34-35 (same).  ERISA defines a "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan.

29 U.S.C. § 1002(21)(A).  Thus, ERISA defines fiduciary in functional terms of control and authority over a plan.  DeLuca v. Blue Cross Blue Shield of Michigan, 628 F.3d 743, 747 (6th Cir. 2010).  The Sunwest Plans specify the control and authority over the plans: "The Plan Administrator shall have the sole discretionary authority to control and manage the operation and administration of the Plan."  PSOF, Exh. C, p. 84; Exh. D, p. 35.  And as the plan fiduciary, plaintiff was charged, by statute, to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."  29 U.S.C. § 1104(a)(1)(B).

As plaintiff states in response to defendant's motion:

> Courts must . . . determine whether the conduct at issue constitutes management or administration of the plan that may give rise to a fiduciary obligation, or whether it involves a settlor function or merely a business decision that has an effect on an ERISA plan but is not subject to fiduciary standards.  See Hunter v. Caliber System, Inc., 220 F.3d 702, 718-19 (6th Cir. 2000) ("[I]t is not the exercise of discretion alone that makes an employer's action subject to fiduciary standards . . . [r]ather , the exercise of discretion must relate to plan management or administration.")

Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment, p. 13.  Having thoroughly considered the issue, I conclude that plaintiff's failure to properly calculate the contributions necessary to fully fund the Sunwest Plans was, indeed, the exercise of discretion relating to plan management and administration and was, consequently, subject to ERISA fiduciary

PAGE  11 - OPINION AND ORDER

standards. Consequently, plaintiff's conduct was excluded from coverage under the Staffing Services Liability Policy and the PEO and EBL Endorsements.

I also note the evidence of record of communications between plaintiff's president, Rebeccah Sotelo, and plaintiff's insurance agent concerning pricing for specific fiduciary liability coverage. See DSOF, Exhs. 3-6. Plaintiff declined fiduciary coverage and instead purchased the Staffing Services Liability Policy and endorsements in issue, which, in more than one place, specifically exclude coverage for any breach of fiduciary duty as defined in the policy. The plain language of the policy exclusions thus belie plaintiff's argument that its reasonable expectation was that defendant's policy covered plaintiff as a fiduciary of the benefit plans.

## CONCLUSION

Plaintiff's Motion (# 71) for Partial Summary Judgment is DENIED. Defendant's Renewed Motion (# 81) for Summary Judgment is GRANTED. The parties shall inform the court within 20 days as to what remains of the case as a result of this decision.

IT IS SO ORDERED.

DATED this 11th day of September, 2012.

       /s/ Robert E. Jones
       ROBERT E. JONES
       U.S. District Judge